Fidelity Trust Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 13638. Promulgated July 27, 1928.

*J. Harry Price, Esq.*, for the petitioner.
*J. L. Deveney, Esq.*, for the respondent.

OPINION.

MARQUETTE: The first question presented for our decision is whether the taxes paid by the petitioner in the year 1920 to Knoxville County, Tennessee, and the City of Knoxville, were taxes due from the petitioner as its own obligation or were paid by it for and on behalf of the stockholders. It seems to be not disputed that if they were assessed against the petitioner on its own property and constituted its own obligation, they are properly deductible in computing net income for 1920. The respondent, however, urges that they were assessed on the shares of the petitioner's capital stock, and that under the laws of Tennessee they were obligations of the petitioner's stockholders which the petitioner paid and for which it had a right or claim to reimbursement. The provisions of the laws of Tennessee applicable here are found in Thompson's Shannon's Code of Tennessee (Ed. 1917), and are as follows:

SEC. 796(a). BE IT FURTHER ENACTED, That the shares of stock of stockholders of any bank or banking association, savings bank, or loan company, or insurance company, or investment company, or cemetery company, or company or incorporation (other than such as are defined and assessable under Sections 21 and 22 of this Act) doing business in this State, whether domestic or foreign, shall be assessed and taxed for State, county, and municipal purposes as the personal property of the stockholders, whether they reside within or without the State of Tennessee; PROVIDED, HOWEVER, the assessment of such shares of stock as the property of the stockholders shall be in lieu of any assessment or taxation of the capital stock or corporate property of such corporation, company, or association. Shares of stock assessable under this section shall be assessed at not less than the actual cash value of the same, less the assessed value of realty and tangible property, which said actual cash value of shares of stock shall be computed by looking to and considering the market value; and if no market value, the actual value of the shares of stock, or from any other evidence of the value of the same.

Real estate and tangible personalty of any corporation, company, or association defined in this section shall be assessed to the same in the same mode and manner and where situate as other real estate and tangible personalty; but in computing the assessable value of such shares of stock, the assessed value of the realty and tangible property shall be deducted from the value of the shares of stock and the remaining value constitute the value upon which the assessment shall be made. Assessments of shares of stock under this section shall be made at the place, ward, or district of the town or county in which the corporation, association, or company is located. The president or business manager of any corporation, association, or company defined in this section of this Act is hereby required to fill out and furnish upon oath to the Assessor an assessment schedule in writing (to be filed with the County Court

Clerk for preservation), which schedule shall contain the following questions, viz:

1. The amount of capital invested in the business.

2. The shares of stock outstanding, with the name and residence of the shareholder.

3. The market value; and if no market value, the actual value of the shares of stock, and what the shares of stock can be sold for on the market.

4. The amount of dividends for the last two years, the amount of surplus and undivided profits, if any.

5. A certified copy of the assessed value of the real estate and tangible personalty and where situate.

6. Such other facts pertaining to the value of the shares of stock as may be demanded or deemed material by the assessor.

\* \* \* \* \* \* \*

SEC. 796 a–3. That for the purpose of collecting such taxes, and in addition to any other laws of this State relative to the imposition and collection of taxes, it shall be the duty of such corporation to pay the taxes due upon such stock, regardless of any dividend or earnings belonging to such stockholder, a prior lien being hereby declared on all such stock on and after the tenth day of January of each year, and the said corporation being hereby subrogated to such prior lien for the purpose of enforcing repayment of any taxes that may be so paid for the account of any such stockholder. If the taxes on such shares shall not be paid by such corporation, then the State, county, and municipality may, after such tax may have become delinquent, proceed to collect the same by attachment on said shares of stock in any court of competent jurisdiction through counsel to be employed for that purpose. \* \* \*

We think it is clear from the section of law just quoted that the petitioner's real estate and tangible property are taxable to it, and that the intangible value of the petitioner's capital stock, determined by deducting from the full value of the stock the assessed value of the real estate and tangible personalty of the petitioner, is taxed to the petitioner's stockholders as their personal property. The petitioner is, however, for convenience of collection required to pay the tax assessed against the stockholders, and is given the right to collect from the stockholders the amount so paid.

The evidence relative to the nature of the taxes in question is not entirely clear or wholly satisfactory, and we think that more and clearer evidence might have been produced. However, we can not here indulge in speculation or conjecture as to what that evidence might show, but we must base our decision entirely on the record before us and the law applicable thereto. On the tax records of Knox County, Tennessee, and the City of Knoxville, the taxes we have under consideration purport to be assessed to the petitioner on real estate and personal property. There is nothing in the evidence from which we can find that they were assessed on the petitioner's capital stock " as personal property of the stockholders." On the state of the record we can only hold that these taxes are what they purport to be from the records of Knox County, Tennessee,

and the City of Knoxville, which have been presented to us, namely, taxes assessed against the petitioner on its real estate and personal property, and that therefore they are deductible in computing the petitioner's net income for 1920.

We are also of opinion that the several agreements or contracts should be included in the petitioner's invested capital at their face value from the time they were executed.

Section 326 (a) of the Revenue Act of 1918 provides:

That as used in this title the term "invested capital" for any year means—

\* \* \* \* \* \* \*

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, \* \* \*

Tangible property is defined in section 325 (a) of the same Act as meaning: "stocks, bonds, notes, and other evidences of indebtedness."

The contracts here in question, in our opinion, fall within the meaning of these sections of the 1918 Revenue Act. Whether they were promissory notes, as the petitioner contends, or whether they were not, they certainly consituted "evidences of indebtedness." They were binding contracts, accepted by the petitioner as payment for its capital stock. The stock was issued to the persons who executed these agreements, as and when the agreements were executed. Dividends upon such stock were paid direct to these stockholders. The evidence shows that these agreements had a marketable value in the City of Knoxville of one hundred cents on the dollar, and there is no question of their *bona fides*.

As these agreements were executed, the sales they called for were completed by the petitioner by the issuance of the designated number of shares of capital stock. There was then something more than a mere subscription or promise to buy which might perhaps be abrogated; there was an executed contract, in so far as the petitioner was concerned, by which the obligor became the owner of shares of stock which he hypothecated as collateral security for the balance of his obligation. We think the facts here distinguish this case from those of *Central Consumers Wine & Liquor Co.*, 1 B. T. A. 1190, and *Diamond Red Paint Co.*, 3 B. T. A. 688, upon which the respondent relies. We are of opinion, and so hold, that the agreements or contracts in question were "evidences of indebtedness" within the meaning of the Revenue Acts of 1918 and 1921; that they were executed by responsible and solvent subscribers; were bona fide paid in for the petitioner's stock, and that the petitioner is entitled to include them in its invested capital at their face value.

*Judgment will be entered under Rule 50.*